IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| LOUIS D. JENKINS and | ) | CASE NO. 02-01755 |
| NAOMI S. JENKINS, | ) | |
| | ) | |
|      Debtors. | ) | |

| | | |
|---|---|---|
| | ) | |
| LOUIS D. JENKINS, | ) | |
| | ) | |
|      Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. 07-07085 |
| | ) | |
| A.T. MASSEY COAL COMPANY, INC., | ) | |
| MASSEY ENERGY CORPORATION, | ) | |
| MARFORK COAL COMPANY, INC., and | ) | |
| MICHAEL BAYS, | ) | |
| | ) | |
|      Defendants. | ) | |

## MEMORANDUM DECISION

       The matter before the Court is the Joint Motion to Determine Assets of the

Bankruptcy Estate filed by the Plaintiff, Louis D. Jenkins, and the Defendants, A.T. Massey Coal

Company, Massey Energy Corporation, Marfork Coal Company, and Michael Bays.  The

parties' joint motion seeks a determination of whether six claims filed by the Plaintiff in West

Virginia state court and removed to this Court are property of the bankruptcy estate of Mr.

Jenkins and his wife, Naomi S. Jenkins.  Those claims are for malicious prosecution, abuse of

process, tort of outrage, tortious interference with a business relationship, defamation, and

negligent investigation and misrepresentation.  Based on the following, this Court concludes that

1

the claims for malicious prosecution and abuse of process are not property of the bankruptcy

estate and that the remaining four claims are property of the estate.

FINDINGS OF FACT

Louis Jenkins ("Plaintiff"), a joint debtor along with his wife in the bankruptcy

proceeding and the plaintiff in this adversary proceeding, filed a voluntary petition under chapter

7 on April 23, 2002 and the case was given the case number 02-01755.  In his

contemporaneously filed schedules, Plaintiff did not name any of the Defendants as creditors nor

did he provide them notice of the filing. The bankruptcy case was administered by the trustee

who filed a Report of No Distribution on June 10, 2002.  On July 30, 2002, the debtors received

a discharge and the case was closed.  The case was reopened on May 4, 2007 upon the trustee's

motion due to the following circumstances.

Prior to bankruptcy filing, Plaintiff operated Virginia Supply Company which was

in the business of buying used conveyor belts from coal mining companies, including A.T.

Massey Coal Company, Massey Energy Corporation, and Marfork Coal Company (together with

Michael Bays, "Defendants"), and refurbishing them to sell to other coal companies for profit.

In 2001, Plaintiff agreed to purchase rolls of conveyor belt at $1.50 per foot for a total of 9,053

feet of belts.

Pursuant to this agreement with Marfork, Plaintiff arrived to pick up the belts on

Saturday and Sunday of the weekend of September 29-30, 2001 and took six belts each day for a

total of twelve belts that weekend.  Plaintiff again returned and picked up six belts on a Saturday

and five belts on a Sunday in early October.  In total, Plaintiff removed twenty-three rolls of

conveyor belt.[1]

The belts were determined missing on October 31, 2001, which prompted Marfork's Superintendent of Outside Services, Michael Bays, to conduct an internal investigation which concluded that Plaintiff had stolen the missing belts. After the completion of his investigation, Bays met with Senior Trooper G.J. Cook of the West Virginia State Police regarding the alleged theft and provided Trooper Cook with a copy of his report, titled "Report of Criminal Investigation," on November 6, 2001. Trooper Cook proceeded to contact Plaintiff and in the course of their meetings, Plaintiff gave a written statement in which he admitted to taking twenty-three rolls of conveyor belt and only paying for ten rolls but denied any wrongdoing. After finalizing his investigation, Trooper Cook turned over his report to the prosecuting attorney for Raleigh County, West Virginia to be presented to a grand jury.

The grand jury indicted Plaintiff on May 13, 2002 on four felony counts relating to the theft of conveyor belts from Marfork's property. The indictment came approximately three weeks after Plaintiff and his wife filed their joint petition in bankruptcy on April 23, 2002. On December 11, 2002, upon motion by the Chief Deputy Prosecuting Attorney for Raleigh County, the Circuit Court of Raleigh County dismissed the charges against Plaintiff without prejudice. This date was over five months after the bankruptcy case was closed on June 30, 2002. The charges and all records regarding Plaintiff's prosecution were ultimately expunged with the consent of the prosecuting attorney under W. Va. Code § 61-11-25 on March 10, 2003.

The immediate adversary proceeding began with the Plaintiff filing a complaint in

---

[1] The parties do not appear to disagree over the number of rolls of belting removed by the Plaintiff. Rather, the parties dispute the lawfulness of that conduct. This Court makes no finding and offers no conclusion on this issue.

the Circuit Court of McDowell County, West Virginia on September 23, 2003 and, thereafter, in

the Circuit Court of Boone County, West Virginia on December 17, 2003.  The complaint

alleges malicious prosecution, abuse of process, tort of outrage, tortious interference with a

business relationship, defamation, and negligent investigation and misrepresentation.  The four

defendants filed separate answers, and Marfork amended its answer on June 14, 2005 to include

a counterclaim against Plaintiff seeking reimbursement for the conveyor belts which Marfork

asserts that Mr. Jenkins took without payment.  Discovery in the civil case proceeded until

October 31, 2006 when Plaintiff stated, in a response to one of the Defendants' interrogatories,

that he had filed for bankruptcy in 2002.

This revelation prompted the Defendants to investigate the bankruptcy proceeding

and what effect it might have on the civil action.  Defendants' counsel notified the bankruptcy

trustee by a letter dated December 14, 2006 of the pending civil case and inquired as to whether

the civil case could proceed in light of the potential inclusion of the proceeds from the case in the

bankruptcy estate.  The trustee eventually filed a motion to reopen the Plaintiff's bankruptcy

case on May 2, 2007 on the basis that Plaintiff had a civil suit pending, which had its genesis in

pre-petition conduct.  The motion was granted by an order dated May 4, 2007, and the

bankruptcy case was reopened.

After the bankruptcy case's reopening in the Bankruptcy Court for the Western

District of Virginia, the Defendants filed a Notice of Removal on May 31, 2007 in the

Bankruptcy Court for the Southern District of West Virginia.  Plaintiff responded to the notice of

removal by filing a Motion to Remand the case to the Circuit Court of Boone County on June 15,

2007.  Plaintiff asserted in his motion to remand that mandatory abstention under 28 U.S.C. §

4

1334(c)(2) applied because, among other things, the state court had jurisdiction to hear the claim and the claim was based on state law.  Additionally, Plaintiff asserted that permissive abstention under 28 U.S.C. § 1334(c)(1) applied because it would promote the interest of justice and serve the interest of comity with the state court.  Defendants opposed the motion to remand and filed their response on August 9, 2007.  The motion for remand, along with the Defendants' opposition to it, was heard by the Bankruptcy Court for the Southern District of West Virginia on August 17, 2007, at which time the court concluded that it did not have jurisdiction to determine the motion to remand.

Prior to that hearing, on August 9, 2007, the Defendants filed a Motion to Transfer the Proceeding to the Virginia Bankruptcy Court, on which the West Virginia Bankruptcy Court heard arguments on October 24, 2007.  After the hearing, the court issued an order dated November 5, 2007 finding that the Virginia bankruptcy court is the proper venue for this adversary proceeding and the Defendants' request to transfer would be granted over Plaintiff's objection.  The order explains that the Bankruptcy Court for the Southern District of West Virginia makes no determination as to any issue pending before the court other than the transfer of the proceeding to the Virginia Bankruptcy Court and that all rights of the parties with respect to remand or any other issues pending before the court are preserved for determination in the Virginia court.

After the parties filed their initial briefs, the Court set a pre-trial telephonic hearing on June 11, 2008 at which the parties agreed to file a joint motion requesting the Court to decide whether the claims advanced by the Plaintiff are assets of the bankruptcy estate by virtue of the timing of the critical events in question.

## CONTENTIONS OF THE PARTIES

In his memorandum supporting the finding that the malicious prosecution claim is not property of the estate filed on July 11, 2008, Plaintiff argued that the cause of action had not accrued on the petition date because all of the elements of the cause of action were not in existence on the filing date.  Under West Virginia law regarding claims for malicious prosecution, the plaintiff must prove the prosecution was malicious, was without reasonable or probable cause, and was terminated favorably for the plaintiff.  The Plaintiff observes that there can be no cause of action for malicious prosecution until and unless an actual criminal prosecution has occurred and terminated favorably to the defendant.  Therefore, until the grand jury returned an indictment, there was, in effect, no prosecution, much less one that had terminated with a dismissal of the criminal charges.  In support of his argument that no cause of action for malicious prosecution even existed at the time of the bankruptcy petition filing, plaintiff cites *Preiser v. MacQueen*, 352 S.E.2d 22, 25 (W. Va. 1986), which held that the statute of limitations upon a cause of action for malicious prosecution does not begin to run until the termination of the prosecution.  Thus, the Plaintiff argues that he did not have a cause of action for malicious prosecution until the charges against him were dismissed.

Plaintiff relied heavily on the case of *Brunswick Bank & Trust Co. v. Atanasov (In re Atanasov)*, 221 B.R. 113 (D.N.J. 1998), in which the debtor defaulted on a bank loan, was indicted on giving false information in obtaining a loan, and subsequently filed a petition in the bankruptcy court.  The indictment was ultimately dismissed post-petition, the bankruptcy case was closed, the debtor sued the bank for malicious prosecution, and the bank moved for a re-opening of the debtor's bankruptcy case.  The District Court for New Jersey denied the bank's

6

motion after determining that the cause of action was not an asset of the bankruptcy estate

because it did not accrue until the criminal case was terminated post-petition.  In applying

*Atanasov* to the current facts, Plaintiff asserts that his claim for malicious prosecution is not part

of his bankruptcy estate because he did not have an interest in the property on the petition date

and because the claim was not traceable to some pre-petition property interest.

Defendants also filed their memorandum of law on July 11, 2008 in which they

assert that all the causes of action are assets of the bankruptcy estate because they are firmly

rooted in pre-petition conduct and are, therefore, estate property under *Segal v. Rochelle*, 382

U.S. 375 (1966) and its progeny.  This is in accord with Virginia federal court decisions,

according to Defendants.  In making a determination of whether causes of action are property of

the estate as existing pre-petition, Defendants argue that the courts should focus on the conduct

and events that are at the center of the claim, not whether the statute of limitations has begun to

run.  However, even if the cause of action accrues at the time the statute of limitations begins to

run, the causes of action would still be pre-petition because the statute of limitations begins to

run in West Virginia at the time of injury, and the alleged injury inflicted by Defendants took

place pre-petition.  In addressing the malicious prosecution claim, Defendants stated that a claim

for malicious prosecution is disfavored by the West Virginia courts, and to prevail, Plaintiff must

show actual malice, which is an improper or evil intent to do harm that is substantially certain to

cause injury without just cause or excuse.  Any purported "malice" on the part of the Defendants

took place pre-petition.  Therefore, because Plaintiff's claims are rooted in pre-petition conduct,

they are property of the estate.

The parties filed their reply briefs on July 21, 2008.  In his reply, Plaintiff argued

7

first that his causes of action are not assets of the estate because they are exempt under Virginia

Code § 34-28.1, which exempts personal injury claims and their proceeds from the bankruptcy

estate.  Plaintiff argues that, because the Defendants conceded in their brief that these claims are

personal injury causes of action, they are exempt and not assets of the estate.  Second, Plaintiff

responds to Defendants' reliance on *Segal*.  *Segal*, Plaintiff asserts, was decided under the former

Bankruptcy Act which was subsequently superseded by the Bankruptcy Code.  Plaintiff argues

that the test set out in *Segal* that included the "firmly rooted" analysis on which Defendants rely,

created uncertainty in the process and prompted Congress to set a definite temporal limit on

property of the estate consisting of "all legal or equitable interests of the debtor in possession as

of the commencement of the case" when it created § 541 of the Bankruptcy Code.  In support of

his assertion that *Segal* is no longer good law, Plaintiff distinguishes the cases on which

Defendants relied.  Additionally, Plaintiff cited decisions from the Fifth, Eighth and Eleventh

Circuits for this proposition that *Segal* had been superseded.[2]  Finally, Plaintiff addressed

whether the causes of action for his claims of malicious prosecution, abuse of process, and tort of

outrage had accrued as of the petition date.  In asserting they did not, Plaintiff argues that the

claim for malicious prosecution did not accrue until the prosecution was favorably terminated,

that the claim for abuse of process did not accrue until the criminal process was improperly used,

and that the claim for tort of outrage did not accrue until he had suffered an actionable level of

emotional distress.  For these reasons, Plaintiff argues the Court should find that none of these

claims is property of the bankruptcy estate.

---

[2] *Bracewell v. Kelley (In re Bracewell)*, 454 F.3d 1234, 1241-1243 (11th Cir. 2006); *Burgess v. Sikes (In re Burgess)*, 438 F.3d 493, 498 (5th Cir. 2006); *Drewes v. Vote (In re Vote)*, 276 F.3d 1024, 1026-1027 (8th Cir. 2000).

Defendants' reply brief argues that federal bankruptcy law determines whether causes of action are property of the estate and state law determines the debtor's interest in the property. State law determinations regarding the timing of accrual do not affect whether causes of action are property of the estate; instead, that analysis is governed by bankruptcy law. Under the *Segal* holding and the Fourth Circuit and Virginia cases adopting the *Segal* analysis, claims that are sufficiently rooted in the pre-petition past are property of the estate. Here, all the Defendants' actions leading to the claims being filed were completed nearly five months prior to Plaintiff's petition. The timing of the criminal indictment and its ultimate dismissal were actions by the West Virginia judicial system and not the Defendants, so the cause of action against the Defendants was sufficiently rooted in pre-petition events to be considered an asset of the estate. Defendants then distinguish the *Atanasov* case and argue that its precedential value was undercut by the Third Circuit's decision in *O'Dowd v. Trueger (In re O'Dowd)*, 233 F.3d 197 (3d Cir. 2000), which rejected cases, including *Atanasov*, which found that a post-petition cause of action was not property of the estate. To the contrary, Virginia's case law holds that claims that accrue post-petition can be assets of the estate under the reasoning set forth in *Segal*, as exemplified by *Field v. Transcontinental Insurance Co.*, 219 B.R. 115 (E.D. Va. 1999), and affirmed on appeal by the Fourth Circuit. Under their reasoning, Defendants state that the court should follow the Fourth Circuit case law and find that the Plaintiff's claim for malicious prosecution is an asset of the bankruptcy estate.

CONCLUSIONS OF LAW

This Court has jurisdiction over this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District

9

Court on July 24, 1984.  The determination of whether state court civil claims are property of the estate is a matter concerning the administration of the estate and a "core" bankruptcy matter pursuant to 28 U.S.C. § 157(b)(2)(A).

Plaintiff asserts two arguments in favor of his position that his causes of action against the Defendants are not property of the estate.  First, he argues that, because personal injury actions are exempt from creditor process under Virginia Code §34-28.1, any interest he may have in the actions against Defendants is not property of the bankruptcy estate, by reason of the exemption.  Second, he argues that, because his causes of action had not yet accrued under West Virginia state law by the date of the commencement of his bankruptcy case, his interest in those actions is not property of the estate under 11 U.S.C. § 541(a).  The Court will address these arguments in turn.

The Plaintiff's argument that his causes of action are exempt under Virginia law and, therefore, not property of the estate is misguided.  Under the Bankruptcy Code, the commencement of a case creates an estate comprised of the properties and interests enumerated in 11 U.S.C. § 541.[3]  After commencement of the case, property of the estate is then administered in a manner consistent with the Bankruptcy Code.  Such administration includes determinations as to which properties of that estate are exempt under 11 U.S.C. § 522.  Thus, while Plaintiff is correct that the Virginia Code exempts personal injury awards, it is the Trustee's duty and any creditor's right to determine whether to object to any claim of exemption, and it is solely within the province of the Court to determine whether any such exemption

---

[3]  Neither party disputes, nor could they, that the estate includes potential claims and causes of action.  *Inner City Mgmt., LLC v. JKV Real Estate Serv. (In re Bogdan)*, 414 F.3d 507, 512 (4th Cir. 2005).

10

claimed is valid.  *See, e.g.,* S. Rep. No. 95-989, at 82 (1978) (*"After* the property comes into the

estate, *then* the debtor is permitted to exempt it under...11 U.S.C. § 522."); *Norton Bankruptcy*

*Law and Practice* 2d § 51:7 (2d ed. 1997) (same); 5 *Collier on Bankruptcy* ¶ 541.02 (Alan N.

Resnick & Henry J. Sommer eds., 15th ed. rev.) (same).  The Court, therefore, rejects the

Plaintiff's first argument, which, in essence, places the cart before the horse.

   The Plaintiff's primary argument, however, presents a more difficult question.  As

noted above, the parties disagree as to whether the Plaintiff's causes of action against the

Defendants are property of the estate.  Answering that question requires a close examination of

whether the Plaintiff had any property rights in those actions at the "commencement of the case."

11 U.S.C. § 541(a).  To this point, the Defendants argue that *Segal* controls the analysis, while

the Plaintiff argues that *Segal* did not survive passage of the Bankruptcy Code.

   In *Segal*, the Court was faced with the question of whether a loss-carryback tax

refund claim was part of the bankruptcy estate where the loss underlying the refunds occurred

pre-petition but the refund was issued post-petition.  382 U.S. at 376-77.  The Court held that the

refund was property of the estate because "it [was] sufficiently rooted in the prebankruptcy

past."  *Id.* at 380.  Notably, *Segal* was decided under the Bankruptcy Act, which has since been

superseded by the Bankruptcy Code.  Plaintiff argues that the "sufficiently rooted" test derived

from *Segal* was superseded by the passage of the Code.  More specifically, he argues that, by

adding the temporal limitation ("at the commencement of the case") within § 541, Congress

explicitly rejected and overruled *Segal*.  The Defendants, on the other hand, argue that the Fourth

Circuit has continued following *Segal*, even after the Code was passed.

   An examination of the Fourth Circuit's case law reveals that the Defendants

11

correctly note that *Segal* is still good law in this Circuit.  For example, in *Andrews v. Riggs*

*National Bank (In re Andrews)*, the Fourth Circuit was faced with a case in which the debtor had

entered into a non-compete agreement (NCA) with his former employer, who agreed to pay him

$1 million, to be paid in quarterly installments with ten percent annual interest.  80 F.3d 906, 908

(4th Cir. 1996).  The debtor had initiated proceedings in the bankruptcy court by motion which

sought to exclude any post-petition payments under the NCA from the bankruptcy estate, and the

Fourth Circuit affirmed the bankruptcy court's ruling denying Debtor's motion.  *Id*. at 907-909.

Assuredly, the decision in *Andrews* is not on all fours with the questions

presented by the current case because the Fourth Circuit was deciding the question of whether

future payments owing the Debtor under the NCA were akin to earnings derived from post-

petition services rendered (which would have been excluded from the estate under §541(a)(6)).

*Id*. at 909.  To answer the question, however, the Court looked to the language of § 541 and

observed that the Section attempts to balance, as does the rest of the Code, the interests of the

creditors and the debtors.  *Id*. at 909-910.  In so doing, the Court recognized that § 541

establishes a bright line between pre-petition and post-petition assets.  *Id*. at 910.  The Court

ultimately answered the question before it by referring to *Segal* and expressly citing its

"sufficiently rooted" test in finding that the payments were firmly rooted in pre-petition conduct

and, therefore, property of the estate.  *Id*. at 910-911.

Certainly, the Court followed this analysis in order to determine whether the term

"services performed" as contained in subsection (a)(6) included the Debtor's continuing

fulfillment of his obligations under the NCA, which was entered into pre-petition, but any

distinction between *Andrews* and the present case on the basis that the specific question in

12

*Andrews* is much different than the question presented today is undercut by the fact that *Andrews* was decided by reference to § 541.  In interpreting the meaning of the term "estate" as used in the Code, it is of no small consequence that the Court still references *Segal*.[4]

That the Fourth Circuit continues to follow *Segal* is further evidenced by its table decision and accompanying unpublished opinion in *Field v. Transcontinental Insurance Co.*, 173 F.3d 424, 1999 WL 102052, 1999 U.S. App. LEXIS 2367 (4th Cir. 1999).  There, the Court noted the District Court's reliance on *Segal*, and affirmed "on the basis of the district court opinion."[5]  1999 WL 102052 at *1, *3, 1999 U.S. App. LEXIS 2367 at *3-*4, *7.  In *Field*, the trustee of the debtor's estate brought an action against the defendant for failing to indemnify or defend the debtor against personal injury claims brought against him.  219 B.R. at 117-118.  The defendant insurer moved for summary judgment, claiming, among other things, that the trustee had no standing to bring the claim, as the claim belonged to the debtor individually, not to the

---

[4] In fact, the Fourth Circuit reaffirmed its position in *Andrews* and applied the *Segal* analysis to the more general question of whether assets which would be received post-petition but that were rooted in the debtor's pre-bankruptcy past were property of the estate.  *Beaman v. Shearin (In re Shearin)*, 224 F.3d 346 (4th Cir. 2000) (concluding that the portion of debtor's year-end distribution of partnership profits that had been earned pre-petition was property of the estate even though such distribution did not occur until after the commencement of the case).

[5] Plaintiff attempts to distinguish *Field* by claiming that discussion of *Segal* in the unpublished opinion is dicta because the Court affirmed the district court on the grounds that the policy in question was in existence at the time the petition was filed.  Understandably, the Plaintiff would like to distance himself from the district court's opinion in *Field*.  However, even a brief review of the language on which the Plaintiff relies forecloses his argument.  The Court mentioned the fact that the policy was in existence at the time the petition was filed during its summary of the district court's reasoning, and this statement was undoubtedly tied to the prior sentence, which observed the district court's reliance on *Segal*, as the two observations are connected by the transitory word "moreover."  1999 WL 102052 at *1, 1999 U.S. App. LEXIS 2367 at *3-*4.  More importantly, the Circuit Court affirmed by accepting the entire district court opinion in unequivocal terms, as noted above.

estate.  *Id*. at 118.

In resolving the issue over ownership of the claim, the district court properly focused on the question of whether the claim was property of the estate.  *Id*.  More to the point, the court focused on whether the debtor had a cause of action against the defendant as of the date of the commencement of the case.  *Id*.  The court observed that the question could present difficult issues of whether the debtor had a viable, ripe claim at the time of the petition were it not for the *Segal* test.  *Id*. at 119.  The court found that, because his right to coverage by the defendant insurer was sufficiently rooted in pre-petition conduct, the question of whether he had a ripe cause of action as of the petition date was inconsequential in determining whether the cause of action against the defendant was property of the estate.  *Id*.  Importantly, the court held that the cause of action was property of the estate based solely on the application of the *Segal* test to the circumstances before it.

Plaintiff argues still that *Segal* was superseded by the passage of the Code.  More specifically, he argues that, when passing the Bankruptcy Code, Congress rejected and overruled *Segal*.  Even though the legislative history of § 541 severely undercuts this argument, *see* S. Rep. 95-989, at 82 (1978) ("The result of *Segal v. Rochelle*...is followed."),[6] Plaintiff accurately points

---

[6] Additionally, while the Plaintiff argues that the addition of the "temporal requirement" in § 541 explicitly rejects and overrules the decision in *Segal*, a review of § 70a of the Bankruptcy Act shows that the temporal requirement was not added by §541.  Instead, the Code merely reworded the temporal requirement that was already present in the Act.  The Act reads, in pertinent part, "The trustee of the estate of a bankrupt..., upon his or their appointment..., shall...be vested by operation of law with the title of the bankrupt *as of the date of the filing of the petition initiating a proceeding*."  § 70 of the Bankruptcy Act (emphasis added).  Insofar as it pertains to the questions presently before this Court, the difference between the language used in the Act and the Code ("as of the commencement of the case") appears to be nothing more than a semantic one.

14

to two different Circuits that have held that *Segal* was superseded by § 541. *See In re Bracewell*, 454 F.3d at 1241-42; *In re Burgess*, 438 F.3d at 498-99. However, the Fourth Circuit has not yet decided the specific question. In addition, the Fourth Circuit has, to date, expressly followed *Segal*'s "sufficiently rooted" test.[7] In light of that fact, even if this Court were to hold some reservation about the continued vitality of *Segal* after passage of the Code, the proper forum to address that question would be the Circuit Court, not this Court. Thus, this Court will continue to follow *Segal* until directed otherwise.

Following *Segal*, it appears that at least three of the six claims in the Plaintiff's complaint are easily disposed of as property of the bankruptcy estate, and the Plaintiff does not make any serious argument otherwise.[8] The facts alleged supporting the Plaintiff's claims of tortious interference with business relationship, defamation, and negligent investigation and misrepresentation all took place before the commencement of the bankruptcy case. Similar to the district court in *Field*, this Court recognizes that many of these claims may well present difficult questions of whether they were ripe on the date the bankruptcy petition was filed. However, these questions would arise under state law, and bankruptcy, not state, law

---

[7] This Court was able to find only one case within the Fourth Circuit that concludes that *Segal* was superseded by statute, and that case predates the decisions of the Fourth Circuit following *Segal*. In *Hovis v. Wright (In re Wright)*, the District Judge found that *Segal* had been superseded by passage of the Code. 39 B.R. 623, 625 (D.S.C. 1983). However, the debtors in Wright had argued that under *Segal*, their contributions to a state retirement system were not property of the estate. The court held that language in *Segal* which limited the types of property considered to be a part of the bankruptcy estate had been superseded by § 541, and, therefore, the Code offered a more inclusive definition of "estate" than did the rule under *Segal* and the Act. *Id.* That the Code actually broadened the rule from *Segal* and effectively negated any of its limiting language is further supported by the discussion in *Field*. 219 B.R. at 119 n. 7.

[8] In his reply brief, Plaintiff argues only that the claims for malicious prosecution, abuse of process, and tort of outrage are not property of the estate.

15

"determines whether a debtor's interest is property of the estate." *In re Strada Design Associates*, 326 B.R. 229, 235 (Bankr. S.D.N.Y. 2005) (citations omitted); *see also In re Coombs*, 1991 WL 220245 at *1, 1991 U.S. App. LEXIS 26047 at *2-*3 (4th Cir. 1991). As such, this Court concludes that these claims derive *solely* from the conduct of the Defendants that took place prior to the commencement of the bankruptcy case and, therefore, as the claims are "sufficiently rooted" in pre-petition conduct, they are appropriately considered property of the estate.

Similarly, Plaintiff's claim of tort of outrage is also property of the estate. For a tort of outrage claim to be successful under West Virginia law, an individual must establish "(1) that the defendant's conduct was atrocious...; (2) that the defendant acted with the intent to inflict emotional distress...; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and (4) that the emotional distress...was so severe that no reasonable person could be expected to endure it." *Travis v. Alcon Laboratories, Inc.*, 504 S.E.2d 419, 425 (W.Va. 1998). Plaintiff argues that any distress he had suffered had not risen to an actionable level until he was indicted post-petition and that, therefore, he did not have a legally cognizable claim for tort of outrage until after the commencement of the case. In so arguing, Plaintiff draws a nuanced legal conclusion from the basic elements of this cause of action which this Court is not comfortable endorsing. As an initial matter, it appears that the third and fourth elements of a claim for tort of outrage are closely related to, if not the direct counterparts of, the damages element of a standard tort. Thus, if Plaintiff's argument were to carry any weight, any damages resulting from a basic personal injury claim, if based on an incident occurring pre-petition, would not be considered property of the estate if those damages would manifest at any time after

commencement of the case.  This Court cannot find any authority for such a position and, as a result, rejects this argument.  *See, e.g., Wischan v. Adler (In re Wischan)*, 77 F.3d 875 (5th Cir. 1996) (holding that debtor's entire interest in a personal injury claim arising from a traffic accident occurring pre-petition was property of the estate even though portions of the award compensated for future pain and suffering that would occur post-petition).  Therefore, this Court concludes that the facts underlying Plaintiff's claim for tort of outrage are sufficiently rooted in pre-petition conduct to render the claim property of the bankruptcy estate.

The claims for abuse of process and malicious prosecution, however, present a much closer issue. With respect to his claim for abuse of process, Plaintiff argues that such a claim requires that formal process be issued against the claimant.  Here, Plaintiff argues that because no such process was issued as of the commencement of his bankruptcy case, the claim was not legally cognizable pre-petition.  Plaintiff notes that, under West Virginia law, "abuse of process consists of the willful or malicious misuse or misapplication of lawfully issued process to accomplish some purpose not intended by that process."  *Williamson v. Harden*, 585 S.E.2d 369, 372 (W. Va. 2003) (citing *Preiser*, 352 S.E.2d at 28).  To support this claim, Plaintiff vaguely alleges that the Defendants misused lawfully issued process by "initiating criminal proceedings" against Plaintiff.  *See* Pl. Compl. ¶ 25.  Insofar as it relates to this Court's decision on whether the claim is property of the estate, this Court finds it important to note that there are conflicting authorities over whether the process which must be abused in order to support such a claim strictly includes judicial proceedings or whether it also includes actions which were

purposefully designed to initiate such proceedings.[9]  Despite that confusion and based on the

language defining an abuse of process cause of action found in *Harden* and *Preiser*, this Court,

for the limited purpose of resolving the issue of whether this claim is part of the bankruptcy

estate, finds that the most sound interpretation of available case law indicates that a viable abuse

of process claim must refer to actions which took place subsequent to the lawful issuance of the

indictment.  Because the indictment occurred post-petition, any factual basis the Plaintiff may

have for this claim must also have occurred post-petition.  Therefore, this Court finds that the

abuse of process claim was not, nor could it be, sufficiently rooted in pre-petition conduct.

With respect to the plaintiff's final claim, the fact that, under West Virginia law, a

successful malicious prosecution claim requires a prosecution that terminated favorably to the

plaintiff, *Preiser,* 352 S.E.2d at 24, coupled with the fact that no criminal prosecution was

initiated until after the commencement of the Plaintiff's bankruptcy case, makes it difficult to

determine whether the claim is "sufficiently" rooted in pre-petition conduct.  To this point, the

Defendants argue that *Segal* and *Field* are controlling.  However, this assertion overlooks critical

distinctions between the facts presented here and those upon which those conclusions were

based.  In *Segal*, the losses underlying the refunds received after commencement of the case

were suffered by the debtors pre-petition.  382 U.S. at 376-377.  Thus, those refunds were

directly attributable to facts in existence pre-petition.  In *Field*, the duty to indemnify, along with

---

[9] *See Cunard v. Mylan Pharms., Inc.*, 2006 U.S. Dist. LEXIS 90467, at *7, 2006 WL 3692648, at *3 (S.D. W. Va. 2006) (acknowledging that a claim for abuse of process is "doubtful" where the plaintiff merely alleges that a search warrant was caused to be issued based on the misrepresentations of the defendant); *but see Pote v. Jarrell*, 412 S.E.2d 770, 775 (W. Va. 1991) (holding that there was sufficient evidence presented from which a jury could conclude that the elements of abuse of process were proven by a preponderance where the sole allegation supporting the claim was the fact that the defendant drafted the complaint for a felony warrant).

any failures of the insurance company to do the same, was derived from an insurance policy in existence prior to the commencement of the case. 219 B.R. at 119. Additionally, the incident against which the trustee maintained that the debtor should have been indemnified occurred pre-petition. *Id.* In both of those cases, most, if not all, of the facts giving rise to a legal interest on the part of the debtor had arisen pre-petition. More importantly, those facts which were vital to the establishment of such interests on the part of the debtors were undeniably established pre-petition. In other words, the losses enabling the refund, the policy, and the incident triggering the duty to indemnify were the significant facts which gave rise to any legal interests of the debtors, and those facts existed pre-petition.

Here, however, this Court cannot conclude that the claim for malicious prosecution was "sufficiently" rooted in pre-petition conduct. While it is certainly true that all of the Defendants' actions had occurred pre-petition, the slightly unusual nature of a claim for malicious prosecution requires that a third party also engage in some act, namely the prosecution of Plaintiff. As such, two vital elements to the malicious prosecution claim were missing at the commencement of the case: the prosecution itself and a favorable termination of such prosecution. Based on this observation, it becomes apparent that this claim was not rooted *sufficiently* in pre-petition conduct as neither the right to bring the claim nor the possibility that such a claim might shortly arise was in existence "at the commencement" of Plaintiff's bankruptcy case within the meaning of § 541.[10] Undoubtedly, the interests considered property

---

[10] As the Plaintiff observed, *In re Atanasov* supports this Court's conclusion. 221 B.R. 113. In *Atanasov*, the debtor filed a malicious prosecution suit against one of his creditors post-petition. *Id.* at 115. The bank attempted to re-open the bankruptcy case to allow any award or settlement resulting from that suit to act as a set-off for the debt it was owed. *Id.* The Court, however, refused to re-open the case because the debtor had not yet received a favorable

19

of the estate are expansive under § 541; however, this Court cannot support any position which would bring into the bankruptcy estate causes of action not existing as of the commencement of the case.  *See* S. Rep. No. 95-989, at 82 (1978).  Here, a conclusion that the claim for malicious prosecution is property of the estate would have such an effect, and such a result, even under *Segal*, was not intended by Congress when enacting § 541.

Moreover, this Court is reluctant to reach any conclusion which would alter the line Congress has drawn between pre-petition and post-petition interests in § 541.  Within this section Congress made only one provision for inclusion of a post-petition entitlement in the bankruptcy estate.[11]  As to such post-petition occurrences included within §541(a)(5), the Rules provide an express obligation upon the debtor to file amended schedules disclosing the event, even if the case has been closed.  *See* Bankr. R. 1007(h).  Within §541(a)(5), Congress included a limited, specific exception to the rule that property interests acquired after the filing date are not property of the estate.  To go beyond that seems to expand the Code in an area in which Congress has specifically legislated, and this Court does not choose to embrace a rule or pass a judgment which would have such an effect.

---

termination of the underlying criminal prosecution as of the commencement of the case.  *Id*. at 117.  Significantly, in that case, the actual prosecution had been initiated pre-petition, and the only element missing at commencement was the "favorable termination" element.  *Id*. at 115.  Still, the Court held that the malicious prosecution claim was not property of the estate.  *Id*. at 117-118.  Here, this Court's decision is supported even further by the fact that *no* prosecution had yet been initiated as of the date the bankruptcy petition was filed.

[11] That Section reads, in pertinent part: "[Property of the] estate is comprised of...[a]ny interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date–(A) by bequest, devise, or inheritance; (B) as a result of a property settlement agreement with the debtor's spouse...; or (C) as a beneficiary of a life insurance policy or death benefit plan."  11 U.S.C. § 541(a)(5).

20

Based on the foregoing, this Court concludes that the Plaintiff's claims of abuse of process and malicious prosecution are not property of the bankruptcy estate.  The remaining claims, however, are property of the estate.  The parties shall have fifteen (15) days from this date to file any motions or renew any previously-filed motions which any of them may determine advisable as a result of the Court's ruling.  A separate order will be entered by this Court reflecting the same and setting a date for a status conference in this adversary proceeding and the related adversary proceeding, No. 08-07010.

ENTER this 2nd day of September, 2008.

_William F. Stone, Jr._
UNITED STATES BANKRUPTCY JUDGE